UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CIVIL ACTION NO. 13-97-DLB

GREGORY LEE ISON                                                                    PLAINTIFF

vs.                      **MEMORANDUM OPINION & ORDER**

MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION                                 DEFENDANT

*** *** ***

## I. INTRODUCTION

This matter is before the Court on Plaintiff's and Defendant's cross-motions for summary judgment. (Docs. # 12 & 16). For the reasons set forth below, the Court will **grant** Defendant's motion, **deny** Plaintiff's motion, and **affirm** the Social Security Administration's decision.

## II. FACTUAL AND PROCEDURAL SUMMARY

Gregory Lee Ison is a resident of Sandy Hook, Kentucky. (Doc. # 8-1, at 45). Born in 1962, Mr. Ison largely dropped out of the labor force in 2007, when he began building garages part time. (*Id.* at 44). That activity earned only $400 per month, and Mr. Ison eventually gave it up because he "couldn't do it." (*Id.* at 46). Before then, he worked in various jobs, including welding, pipe fitting, and equipment installation. (*Id.* at 49). Mr. Ison stopped working, he claims, primarily because of back pain and high blood pressure, though he also suffers from other problems. (*Id.* at 50).

On May 8, 2009, Mr. Ison applied for disability, disability insurance, and supplemental security income benefits. (*Id.* at 24). That application was denied initially and after reconsideration . (*Id.*) Thereafter, Plaintiff requested a hearing before an administrative law judge (ALJ). (*Id.*) That hearing was held on March 1, 2012, before ALJ Brian LeCours, in Huntington, WV. (*Id.*) At the hearing, ALJ LeCours interviewed the Plaintiff regarding his ailments, his work history, and his disability application. (*Id.* at 40-66). The ALJ also interviewed agency vocational expert (VE) Dwight McMillion. (*Id.* at 68-80).

ALJ LeCours issued his written opinion on May 14, 2012, denying Mr. Ison's disability claims. While the ALJ found that Mr. Ison did suffer from some severe ailments, none of those ailments proved debilitating. (*Id.* at 22-26). Mr. Ison maintained the ability to do light work, so long as he didn't have to carry heavy objects. (*Id.*) ALJ LeCours concluded, based on the testimony of the VE, that enough jobs existed in the national economy that could accommodate Mr. Ison's ailments. (*Id.*)

Unsatisfied with the ALJ's written opinion, Mr. Ison asked the agency's Appeals Council to overrule ALJ LeCours's written opinion, which it declined to do in a June 19, 2013 letter. (*Id.* at 6). Mr. Ison then appealed the agency's decision to this Court. (Doc. # 1).

## III. ANALYSIS

### A. Standard of Review

The Court's review is limited to determining whether the Commissioner's decision followed proper legal standards and whether the Commissioner's findings are supported

by substantial evidence . *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Under this deferential standard, courts will not substitute their judgment for that of the ALJ. *Id.* The Court does not resolve evidentiary conflicts or decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Even if the Court might have decided an issue otherwise, it will defer to the agency so long as the agency's decision was supported by substantial evidence. Interpretations of statutes and agency regulations, on the other hand, are questions of law, which the Court will review de novo. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007).

**B.    The Five-Step Sequential Analysis and the Residual Functional Capacity**

In deciding whether to award disability benefits, the ALJ must proceed through a five-step analysis. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). First, the ALJ determines whether the applicant is gainfully employed. 20 C.F.R. § 404.1520(b). If so, the disability application fails; if not, the ALJ proceeds to step two and determines whether the claimant suffers from any severe physical or mental impairments. Id. at § 1520(c). Assuming the answer is yes, the ALJ then considers, at the third step, whether the applicant's impairments are among those listed in Social Security regulations (or equivalent to those listed), such that the applicant is presumed disabled. Id. at § 1520(d).

If a claimant's impairments fail to qualify as a listed impairment under agency regulations, the ALJ must then prepare a residual functional capacity (RFC). 20 C.F.R. § 404.1520(e). This RFC is used at both steps four and five of the process. Id. at § 1520(a)(4). At step four, the ALJ decides, in light of the RFC, whether the claimant can

3

perform any past relevant work.  Id. at § 1520(a)(4)(iv).  If so, then the claimant is not eligible for benefits.  Id.  If not, the ALJ then considers alternative work the claimant could do, and evaluates whether enough of that work exists in the national economy to preclude an award of disability benefits.  Id. at § 1520(a)(4)(v).  This determination at the fifth and final step is based in part on the RFC, which guides the ALJ regarding the type of work the claimant might be able to perform.  Id.

In the present matter, Plaintiff takes issue with the ALJ's analysis at nearly every step of the process.  The ALJ's alleged errors are as follows:  At step two, the ALJ erroneously concluded that neither Plaintiff's cervical disk disease nor his hypertension qualified as severe impairments.  At step three, the ALJ failed to adequately consider whether the sum of Plaintiff's ailments were equivalent to a listed impairment.  The ALJ's RFC determination was faulty for two reasons: first, it failed to account for Plaintiff's obesity; second, it was based on a flawed credibility finding.  Finally, at step five, the ALJ relied on vocational expert testimony given in response to an inaccurate hypothetical. The Court will reject each of these arguments, for reasons discussed in detail below.

**C.     The ALJ's Decision Is Supported by Substantial Evidence**

**1.     The ALJ correctly determined that some of Plaintiff's impairments were not severe.**

At Step Two, ALJ LeCours determined that Plaintiff suffered from the following non-severe impairments: hypertension, hyperlipidemia, obesity, and vision loss.  Plaintiff protests that his hypertension and his "documented cervical disk disease" should have been listed as severe impairments.

The ALJ's decision here was supported by substantial evidence. As the Sixth Circuit has held, it is "unnecessary" to address whether specific ailments count as "severe" when an ALJ determines that at least one other ailment so qualifies. *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). The reason is simple: designating impairments as "severe" or "not-severe" screens disability claims. If a claimant has no severe impairments, the ALJ can stop the analysis right there. 20 C.F.R. § 404.1520(c). If however, a claimant has at least one severe impairment, then the ALJ must consider all of Plaintiff's ailments–severe or not–through the rest of the process. So whether Plaintiff's hypertension is "severe" or not does not matter where, as here, the ALJ found that other ailments were severe.

The ALJ did not reject Plaintiff's claim for lack of severe impairments, and considered Plaintiff's hypertension and spinal ailments throughout the rest of his written opinion. (*See, e.g.*, Doc. # 8-1, at 22) ("Cervical x-ray showed...a degenerative disc disease at C5-C6"). As the Sixth Circuit has held, so long as an ALJ considers Plaintiff's ailments at later steps of the process, the ALJ's failure to designate those ailments as severe do "not constitute reversible error." *Maziarz*, 837 F.2d at 244. Because the ALJ did consider those ailments in evaluating Plaintiff's application, the Court declines to remand the case on these grounds.

## 2. The agency correctly decided that Plaintiff's impairments do not equal a listed impairment.

Plaintiff argues that the ALJ failed to engage in "equivalence" analysis, as is required by social security regulations. Under those regulations, a social security claimant can receive benefits if he shows that his "combination of impairments" equals a listed

5

impairment. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (citing 20 CFR § 416.926(a)). To do so, however, Plaintiff "must present medical findings equal in severity to all the criteria for the...most similar listed impairment." *Id.*

Plaintiff has not presented such medical findings here. Nor did he do so before the agency. Plaintiff cites the ALJ's failure to discuss certain parts of the record–including leg weakness, episodes of falling, or reported antalgic gait. (Doc. # 20-1, at 9). Yet he does not inform the Court how these problems, when combined, somehow equal a listed impairment, or even which listed impairment this combination somehow equals.

The closest Plaintiff comes is in regard to Listing 1.04. "It is reversible error," Plaintiff argues, "for the ALJ not to consider the combined effect of Gregory's cervical degenerative disk disease and congestive heart failure with hypertension in determining whether Gregory suffers from a combined condition of such severity that Listing 1.04 is equaled despite any lack of sensory deficit." (Doc. # 20-1, at 9). Plaintiff must do better than this. Why is it "reversible error"? Plaintiff discusses no legal rule that the ALJ violated. Nor does he inform the Court why that list of impairments somehow triggers Listing 1.04. That provision of agency regulations provides that named disorders of the spine, combined with one of three other problems, triggers automatic disability entitlement. There is no indication how any of Plaintiff's other ailments equal some other component of the listing. There is, instead, a laundry list of impairments, and the apparent hope the Court will infer error.

On this question of what analytical load the ALJ must carry, the Sixth Circuit has set the bar pretty low. The Sixth Circuit has held that so long as the ALJ discusses a claimant's "combination of impairments," they need not discuss each of those impairments

6

in detail. *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990). "An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings. *Id.* (citing *Gooch v. Secretary of H.H.S.*, 833 F.2d 589, 592 (6th Cir.1987), cert. denied, 484 U.S. 1075 (1988)).

Here, the record reflects that the ALJ did consider the cumulative effects of Plaintiff's impairments. ALJ LeCours specifically found that Plaintiff "does not have an impairment or *combination of impairments* that meets or medically equals the severity of the listed impairments." (Doc. # 8-1, at 105) (emphasis added). And he further discussed the evidence of record and how it showed the absence of any impairments that would trigger listing 1.04. While the ALJ might have devoted more discussion to Listing 1.04, this is not what the Sixth Circuit requires. His analysis on this issue, if unsatisfying and minimal, was nevertheless legally adequate. The Court is bound by *Gooch*, and will not reverse the ALJ's decision on these grounds.

### 3. The ALJ followed agency regulations in analyzing Plaintiff's obesity.

The ALJ properly considered evidence of Plaintiff's obesity. Under Social Security Regulation 02-1p, the agency must consider the impact obesity has on a claimant's ability to work. Titles II & Xvi: Evaluation of Obesity, SSR 02-1P, para. 8 (S.S.A Sept. 12, 2002). Yet again, Plaintiff assumes that because the agency must consider an ailment, the agency must consider it with sufficient detail to satisfy Plaintiff. That is not true here.

In *Cranfield v. Comm'r, Soc. Sec.*, 79 F. App'x 852 (6th Cir. 2003), the Sixth Circuit addressed an appeal similar to Mr. Ison's. The claimant, Ms. Cranfield, suffered from foot, back, and leg problems. *Id.* at 853. She was also obese, a fact supported by multiple physician reports. *Id.* at 854-855. Despite this, the Social Security Administration determined that Ms. Cranfield was not disabled, and, importantly, it made this determination without any specific discussion of her obesity. *Id.* at 857.

This omission, held the Circuit, was justified because there was no evidence that obesity significantly affected her ability to work. "Neither Ms. Cranfield nor her doctors offered any evidence to suggest that her weight was a significant impairment. Since Ms. Cranfield's claims did not indicate that obesity was a significant impairment, the ALJ was not required to give the issue any more attention than he did." *Cranfield*, 79 F. App'x at 857. Because there was little evidence that obesity significantly affected the claimant's condition, the ALJ was not required to discuss obesity in any great detail.

The Court sees no reason to distinguish *Cranfield* from the present dispute. Plaintiff's brief says nothing about how obesity complicates his condition. (Doc. # 20-1, 9-11). Yes, Dr. El-Amin diagnosed Plaintiff with obesity, but the same was true of Ms. Cranfield. Again, Plaintiff's counsel must do more than cite agency regulations and imply that the ALJ failed to follow them. The ALJ considered Plaintiff's "hyperlipidemia, obesity, and sciatica" in formulating his RFC. (Doc. # 8-1, at 30). Agency regulations, and the Sixth Circuit's *Cranfield* decision, impose no heightened burden on the ALJ. Neither Plaintiff's memorandum, nor the record, indicate that Plaintiff's obesity was so severe that it required fuller explication. The ALJ need only consider that ailment, and the record shows that he did so.

### 4. The ALJ satisfactorily followed SSR 96-7p.

Social Security Regulation 96-7p requires that the ALJ's credibility determinations must make clear to "the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007). Plaintiff claims that the ALJ erred on this front, but his arguments on this point are so underdeveloped that they *violate multiple Court orders*.

Plaintiff's fourth argument has two citations to the record, both of which occur in the first paragraph. The first of these citations supports the proposition that Dr. Irlandez's RFC was completed before evidence of Plaintiff's degenerative disk disease came to light. (Doc. # 20-1, at 11). The second of these supports the allegation that the "ALJ incorrectly indicated that Gregory had not had injection therapy for his pain," (*Id.*) But this is false, as the ALJ indicated that Plaintiff was "utilizing injections as well as pain medication."[1] (Doc. #8 8-1, at 30).

The Federal Rules of Civil Procedure and the Court's own orders require more than sparse citations to the record, some of which are inaccurate. Those rules demand that lawyers support all factual claims with citations to the record. *See* Fed. R. Civ. P. 56(c)(1). On April 7, 2014, the Court, finding counsel's factual citations inadequate, gave him an opportunity to correct his errors. In its order, the Court wrote that "[o]n page 13, for instance, Plaintiff's counsel compiles a laundry list of facts allegedly derived from the administrative record–among them, that Plaintiff suffers from an edema and that Plaintiff

---

[1] The ALJ also notes that, at other times, Plaintiff had refused injective treatments for pain. (*See, e.g.*, Doc. # 8-1, at 23). But the ALJ does not, as Plaintiff claims, ignore Plaintiff's injective treatments.

uses heating pads to help with pain. And yet, on the entire page, nary a citation to the record can be found." (Doc. # 17, at 2). The Court ordered Plaintiff's counsel to correct this error, but he has failed to do so. In the very same section of his brief, Plaintiff again cites to those very same facts with the very same failure to cite to the record.

As the Court noted in that same Order, the Court will not search through the record, as that is the job of lawyers–not judges. To again borrow the words of Judge Richard Posner, "we cannot write a party's brief, pronounce ourselves convinced by it, and so rule in the party's favor. That's not how an adversarial system of adjudication works. Unlike the inquisitorial systems of Continental Europe, Japan, and elsewhere, our system is heavily dependent on the parties' lawyers for evidence, research, and analysis." *Xue Juan Chen v. Holder*, 737 F.3d 1084, 1085 (7th Cir. 2013).

More importantly, as the Court's September 27, 2013 order indicates, "failure to provide specific citations to the record may constitute grounds for denial of the motion." The Court has already offered Plaintiff's counsel an opportunity to cure this defect, and he has failed. Because of that, Plaintiff's fourth argument is waived.

Even were it not waived, the Court finds ample support for the ALJ's credibility determination. He rated Plaintiff's credibility as only fair, because Plaintiff declined surgery to correct his problems and reported that pain medication was effective for his pain, even if it failed to eliminate it. (Doc. # 8-1, at 28). Plaintiff's heart condition is under control, and he suffers from no decreased range of motion. (*Id.* at 23). Further, Plaintiff testified that he continued to work after his disability onset date building garages. (*Id.* at 24; Doc. # 8-1, at 40).

There are certainly facts in the record that bolster Plaintiff's claims of more debilitating pain, but it is not the Court's job to determine whether the ALJ's determination is perfect. It is, instead, the Court's job to determine whether the ALJ's opinion was supported by substantial evidence. Given the evidence of record, and Plaintiff's counsel's failure to cite to the record, the ALJ's decision has cleared that bar.

**5.     The ALJ relied on accurate VE testimony.**

Plaintiff's fifth and final argument is that the ALJ relied on inadequate VE testimony. Under agency regulations, the hypothetical supplied to a vocational expert must accurately reflect Plaintiff's limitations. *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Otherwise, the testimony elicited from the VE will not constitute substantial evidence. *Id.*

Plaintiff's efforts to show that the VE relied on an inaccurate hypothetical fail. During the hearing, the ALJ first posed a hypothetical claimant who could perform a "full range of light work" with certain further limitations. (Doc. # 8-1, at 79). The VE explained that such an individual could perform a number of "light and sedentary jobs"–among them labeler and machine tender. (*Id.* at 79-80). There is nothing inaccurate about the hypothetical or the testimony derived from it. In fact, the hypothetical hewed closely to the RFC adopted by the ALJ.

It is true, as Plaintiff notes, that when supplied with a more limited hypothetical claimant, the VE advised the ALJ that such a claimant would qualify as disabled. (Doc. # 8-1, at 81). Yet that hypothetical was based on an "assumption...that I find claimant's testimony credible." (*Id.*) As discussed previously, however, the ALJ did not find the claimant's testimony fully credible, and so Plaintiff's arguments here are essentially just a

rehash of his prior claims–that the RFC is somehow deficient; that the ALJ failed to give Plaintiff's testimony its due weight. Because the Court has already rejected those arguments, the Court will not find that the ALJ relied on deficient VE testimony.

IV. **CONCLUSION**

Accordingly, for the reasons stated herein,

**IT IS ORDERED** that:

(1)   The Commissioner's Motion for Summary Judgment is hereby **granted**;

(2)   Plaintiff's Motion for Summary Judgment is hereby **denied**;

(3)   A Judgment shall be entered contemporaneously with this opinion.

This 7th day of August, 2014.



G:\DATA\SocialSecurity\MOOs\Ashland\13-97 Ison MOO.wpd